UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CRAIG STREIT, | : | CIVIL CASE NO. |
|     Plaintiff, | : | |
| VS. | : | |
| | : | |
| AMDOCS, INC., | : | |
|     Defendant. | : | OCTOBER 11, 2005 |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. This action seeks monetary damages for the defendant's breach of the provisions of a written employment agreement pursuant to which the defendant had employed the services of the plaintiff.

### II. JURISDICTION

2. Jurisdiction over the plaintiff's claims is invoked pursuant to Title 28 U.S.C. §1332(a)(1).

### III. VENUE

3. This action properly lies in the District of Connecticut pursuant to Title 28 U.S.C. §1391(a)(1).

## IV. PARTIES

4. The plaintiff is a citizen of the United States and resides in Easton, Connecticut.

5. The defendant, Amdocs, Inc., is a corporation organized and existing under the laws of Delaware.

6. The defendant, Amdocs, Inc. has a principal place of business in Chesterfield, Missouri, where it maintains its corporate headquarters.

7. The defendant, through 2003, maintained a significant presence in the State of Connecticut, where it occupied offices in Stamford, Connecticut.

8. The defendant regularly transacts business in the state of Connecticut and is subject to the jurisdiction of the United States District Court for the District of Connecticut.

9. A substantial part of the events and omissions giving rise to the plaintiff's claim occurred in the state of Connecticut.

## V. STATEMENT OF FACTS

10. On July 28, 1999, the plaintiff entered into an employment agreement with the defendant's predecessor, International Telecommunication Data Systems, Inc., whereby the plaintiff agreed to serve as the vice president of marketing.

11. The plaintiff commenced employment with the defendant's predecessor, International Telecommunication Data Systems, Inc. on August 2, 1999, pursuant to the terms of a written employment agreement, which had a term from August 2, 1999 to August 2, 2001.

12. After the plaintiff commenced employment with the defendant's predecessor, International Telecommunication Data Systems, Inc., International Telecommunication Data Systems, Inc. was acquired by the defendant.

13. As the successor to International Telecommunication Data Systems, Inc., the defendant became obligated to fulfill the terms of the Employment Agreement with the plaintiff.

14. At the time the plaintiff commenced employment with International Telecommunication Data Systems, Inc., International Telecommunication Data Systems, Inc. entered into a stock option agreement with the plaintiff, which was entitled, "Incentive Stock Option Agreement", Exhibit 1.

15. Pursuant to the terms of the stock option agreement, the plaintiff was granted an option to purchase fifty thousand (50,000) shares of Common Stock of the Corporation, at market value on the date of grant, vesting over a four-year period pursuant to the terms of the Plan.

16. Pursuant to the terms of the stock option agreement, the defendants' predecessor, International Telecommunication Data Systems, Inc., contracted to provide the plaintiff the option to purchase 50,000 shares of stock at a particular price, vesting over a four-year period, with twenty-five (25%) percent of the original grant of options becoming exercisable on each anniversary of the plaintiff's employment date.

17. Shortly after the plaintiff's first anniversary of employment, the defendant summarily terminated the plaintiff's employment.

18. The defendant asserted that they had discharged the plaintiff's employment for cause thereby immediately terminating the plaintiff's right to exercise the option to purchase the company stock, which the defendant was contractually obligated to extend the plaintiff under the terms of the stock option agreement.

19. The defendant's summary termination of the plaintiff's employment before the end of the Employment Agreement denied the plaintiff the vesting of the stock options associated with his second anniversary date. Specifically, the second 25% of the 50,000 share option grant (i.e., 12,500 shares) awarded the plaintiff would have become exercisable ("vested") on August 2, 2001, per the Incentive Stock Option Agreement.

20. August 2, 2001 would also have been the plaintiff's last date of employment under the employment agreement.

21. In an earlier arbitration case between the plaintiff and the , the arbitrator granted the plaintiff an award that clearly recognized the fact that the defendant's assertion of termination for cause was unjustifiable.

22. On August 2, 2001, the plaintiff was entitled to the right to exercise an option to purchase 12,500 shares of the defendant's stock, which the defendant unlawfully deprived the plaintiff.

## VI.  FIRST CAUSE OF ACTION
   (Breach of Contract)

23-44. Paragraphs 1-22 are hereby made paragraphs 23-44.

45. The defendant breached the express terms of the Stock Incentive Plan when it refused to allow the plaintiff to exercise his right to purchase 12,500 shares of the defendant's stock on August 2, 2001.

46. The plaintiff's losses as a result of the defendant's breach of its agreement with the plaintiff exceed $75,000.00.

## VII. **PRAYER FOR RELIEF**

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

    (a)    Award the plaintiff contractual damages;

    (b)    Award the plaintiff costs;

    (c)    Grant plaintiff such other relief as the Court may deem just and proper.

**THE PLAINTIFF REQUESTS A JURY TRIAL TO JUDGE HIS CAUSE OF ACTION.**

THE PLAINTIFF

BY _/s/ Thomas W. Bucci_
Thomas W. Bucci
Fed. Bar #ct07805
WILLINGER, WILLINGER & BUCCI, P.C.
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
Email: thomasbucci@earthlink.net

6



## International Telecommunication Data Systems, Inc.

### Incentive Stock Option Agreement
### Granted Under 1996 Stock Incentive Plan

1. **Grant of Option.**

This agreement evidences the grant by International Telecommunication Data Systems, Inc., a Delaware corporation (the "Company") on <u>August 2, 1999</u>, to <u>Craig Streit</u>, an employee of the Company (the "Participant"), of an option to purchase, in whole or in part, on the terms provided herein and in the Company's 1996 Stock Incentive Plan (the "Plan"), a total of <u>50,000</u> shares of common stock, $0.01 par value per share, of the Company ("Common Stock") (the "Shares") at $9.25 per Share. Unless earlier terminated, this option shall expire on August 2, 2009 (the "Final Exercise Date").

It is intended that the option evidenced by this agreement shall be an incentive stock option as defined in Section 422 of the Internal Revenue Code of 1986, as amended and any regulations promulgated thereunder (the "Code"). Except as otherwise indicated by the context, the term "Participant", as used in this option, shall be deemed to include any person who acquires the right to exercise this option validly under its terms.

*[handwritten annotation: except that this option will become completely excercisable ("vest") as to 100% (one hundred percent) of the original number of shares immediately upon any change of ownership in the Company.]*

2. **Vesting Schedule.**

This option will become exercisable ("vest") as to <u>25</u>% of the original number of Shares on the first anniversary of the date of the grant of the option (the "Grant Date") and as to an additional <u>25</u>% of the original number of Shares at the end of each successive full twelve-month period following the first anniversary of the Grant Date until the fourth anniversary of the Grant Date. This option shall expire upon, and will not be exercisable after, the Final Exercise Date.

The right of exercise shall be cumulative so that to the extent the option is not exercised in any period to the maximum extent permissible it shall continue to be exercisable, in whole or in part, with respect to all shares for which it is vested until the earlier of the Final Exercise Date or the termination of this option under Section 3 hereof or the Plan.

3. **Exercise of Option.**

(a) <u>Form of Exercise</u>. Each election to exercise this option shall be in writing, signed by the Participant, and received by the Company at its principal office, accompanied by this agreement, and payment in full in the manner provided in Sections 5(f)(1) and 5(f)(2)(i) and (ii) of the Plan. The Participant may purchase less than the number of shares covered hereby, provided that no partial exercise of this option may be for any fractional share or for fewer than ten whole shares.

(b) <u>Continuous Relationship with the Company Required</u>. Except as otherwise provided in this Section 3, this option may not be exercised unless the Participant, at the time he or she exercises this option, is, and has been at all times since the date of grant of this option, an employee, officer or director of, or consultant or advisor to, the Company or any parent or subsidiary of the Company as defined in Section 424(e) or (f) of the Code (an "Eligible Participant").

(c) <u>Termination of Relationship with the Company</u>. If the Participant ceases to be an Eligible Participant for any reason, then, except as provided in paragraphs (d) and (e) below, the right to exercise this option shall terminate three months after such cessation (but in no event after the Final Exercise Date), <u>provided that</u> this option shall be exercisable only to the extent that the Participant was entitled to exercise this option on the date of such cessation. Notwithstanding the foregoing, if the Participant, prior to the Final Exercise Date, violates the non-competition or confidentiality provisions of any employment contract, confidentiality and nondisclosure agreement or other agreement between the Participant and the Company, the right to exercise this option shall terminate immediately upon such violation.

(d) <u>Exercise Period Upon Death or Disability</u>. If the Participant dies or becomes disabled (within the meaning of Section 22(e)(3) of the Code) prior to the Final Exercise Date while he or she is an Eligible Participant and the Company has not terminated such relationship for "cause" as specified in paragraph (e) below, this option shall be exercisable, within the period of one year following the date of death or disability of the Participant by the Participant, <u>provided that</u> this option shall be exercisable only to the extent that this option was exercisable by the Participant on the date of his or her death or disability, and further provided that this option shall not be exercisable after the Final Exercise Date.

(e) <u>Discharge for Cause</u>. If the Participant, prior to the Final Exercise Date, is discharged by the Company for "cause" (as defined below), the right to exercise this option shall terminate immediately upon the effective date of such discharge. "Cause" shall mean willful misconduct by the Participant or willful failure by the Participant to perform his or her responsibilities to the Company (including, without limitation, breach by the Participant of any provision of any employment, consulting, advisory, nondisclosure, non-competition or other similar agreement between the Participant and the Company), as determined by the Company, which determination shall be conclusive. The Participant shall be considered to have been discharged for "Cause" if the Company determines, within 30 days after the Participant's resignation, that discharge for cause was warranted.

4. <u>Withholding</u>.

No Shares will be issued pursuant to the exercise of this option unless and until the Participant pays to the Company, or makes provision satisfactory to the Company for payment of, any federal, state or local withholding taxes required by law to be withheld in respect of this option.

5. <u>Nontransferability of Option</u>.

This option may not be sold, assigned, transferred, pledged or otherwise encumbered by the Participant, either voluntarily or by operation of law, except by will or the laws of descent and distribution, and, during the lifetime of the Participant, this option shall be exercisable only by the Participant.

6. <u>Disqualifying Disposition</u>.

If the Participant disposes of Shares acquired upon exercise of this option within two years from the date of grant of the option or one year after such Shares were acquired pursuant to exercise of this option, the participant shall notify the Company in writing of such disposition.

7. <u>Provisions of the Plan</u>.

This option is subject to the provisions of the Plan, a copy of which is furnished to the Participant with this option.

IN WITNESS WHEREOF, the Company has caused this option to be executed under its corporate seal by its duly authorized officer. This option shall take effect as a sealed instrument.

INTERNATIONAL TELECOMMUNICATION DATA SYSTEMS, INC.

Date: August 2, 1999         By: *[signature]*
                                 Peter P. Bassermann
                                 President and Chief Executive Officer

## PARTICIPANT'S ACCEPTANCE

The undersigned hereby accepts the foregoing option and agrees to the terms and conditions thereof. The undersigned hereby acknowledges receipt of a copy of the Company's 1996 Stock Incentive Plan.

Participant: Craig Streit

Signature: *[signature]*

Address: 1919 PRAIRIE SQUARE UNIT 27 SCHAUMBURG, IL 60173

If the Participant resides in a community property state, the Participant's spouse also accepts the option by signature below. (Please note: neither Connecticut nor Illinois is a community property state.)

_____
Signature of Spouse (if required)

_____
Name